PINCOCK, Sheriff, v. KIMBALL, District Judge, et al.

No. 4154.   Decided July 16, 1924.   (228 Pac. 221.)

1.  CERTIORARI—ONLY JURISDICTIONAL QUESTIONS REVIEWED.   Under Comp. Laws 1917, §§ 7376, 7377, 7383, certiorari or a writ of review will extend no further than to determine whether the inferior court or tribunal has exceeded its jurisdiction either by want of having acquired jurisdiction of the parties or not having jurisdiction of the subject-matter, and does not authorize Supreme Court to examine trial court's findings to determine whether they support the decree.[1]

---

[1] *Gilbert* v. *Board of P. & F. Com'rs*, 11 Utah, 378, 40 Pac. 264; *S. L. C., etc. Co.* v. *Salt Lake City*, 24 Utah, 282, 67 Pac. 791; *O. S. L. R. R. Co.* v. *District Court*, 30 Utah, 371, 85 Pac. 360, 362, 374; *Page* v. *Bank*, 38 Utah, 449, 112 Pac. 816, 819; *Higgs* v. *Burton*, 58 Utah, 104, 197 Pac. 728, 730; *Rohwer* v. *District Court*, 41 Utah 284, 125 Pac. 671, 673.

2. JUDGMENT—RECITALS IMPORT VERITY. Recitals of jurisdictional facts in a record or decree import verity and binding effect, and must be so treated when attacked collaterally.[2]

3. SHERIFFS AND CONSTABLES—SHERIFF HELD NOT ENTITLED TO INDEMNITY TO PROTECT HIM ON SALE OF CORPORATE STOCK. Where corporate stock was garnished, known interested parties were interpleaded, and hearing had, a decree directing the holder to deliver the stock to the sheriff to be sold by him, and directing the disposition of the proceeds of the sale, *held* sufficient protection to the sheriff in making the sale directed, as respects a third party who was not party to the original proceeding or garnishment proceedings and who filed written notice to the sheriff claiming to be owner of the stock, so that sheriff was not entitled to indemnity against loss, under Comp. Laws 1917, §§ 6916, 6922.

4. SHERIFFS AND CONSTABLES—INDEMNITY STATUTE INAPPLICABLE, WHERE SPECIFIC PROPERTY DIRECTED TO BE SOLD. Comp. Laws 1917, § 6922, as to indemnity to officer levying execution, does not apply to a case where the officer is directed to sell specific property already in his possession, but entitles him to indemnity when he carries into effect an ordinary execution by levy on goods described, not specifically, but only as the goods of defendant; such description requiring exercise of judgment, from risk of error in which the officer is entitled to protection.

5. EXECUTION—ONLY INTEREST OF DEBTOR SOLD. In ordinary execution, the sheriff cannot sell and does not attempt to sell, any title to the property, except the interest of the judgment debtor in the property sold, and, if judgment debtor has no interest and the property belongs to a third party, the latter may recover it or its value into whosesoever hands it may come.

Petition by R. D. Pincock, as Sheriff of Weber County, for a writ of certiorari, against Hon. J. N. Kimball, as Judge of the District Court of Weber County, and others.

Petition denied.

*De Vine, Howell, Stine & Gwilliam* and *A. W. Agee,* all of Ogden, for plaintiff.

[2] *Hoagland* v. *Hoagland*, 19 Utah, 103, 57 Pac. 20.
See 11 C. J. § 23; 35 Cyc. p. 1759; 23 C. J. § 789.

*Henderson & Johnson,* of Ogden, for defendants.

/ GIDEON, J.

On petition of R. D. Pincock, sheriff of Weber county, plaintiff, a writ of certiorari was issued to the district court of Weber county directing that court and the judge thereof to refrain from carrying into effect a decree adjudging plaintiff to be in contempt, and that said court certify "a transcript of the record and proceedings had in said matter in order that the same may be reviewed by this court." In compliance with that writ the record of the proceedings in the district court leading up to the judgment of contempt has been certified to this court. Counsel for the defendants, at the time set for argument, appeared and moved the court to annul and cancel the writ upon the ground that the return shows that the district court had jurisdiction of the parties and the matter in controversy. In that state of the record oral arguments were had, and the parties have filed elaborate written briefs.

The proceedings sought to be reviewed grew out of a judgment obtained in said district court in an action wherein the firm of Henderson & Johnson were plaintiffs, and the Pingree Sugar Company, a corporation, was defendant.

It appears that at the time of filing the original suit by Henderson & Johnson a writ of garnishment was caused to be issued and served on the Bankers' Trust Company of Salt Lake City; that that company answered the writ, and thereafter an amended answer was made by the trust company. It also appears from the amended answer of the trust company that other parties were claiming an interest in the corporate stock sought to be reached by the garnishment. The court thereupon ordered such interested parties to be interpleaded in the action, and directed process to be served on each of the interested parties. Service of process was made. Some of the parties appeared and filed pleadings in the action; others failed to plead; and their defaults were regularly entered. Henderson & Johnson answered the amended re-

turn of the garnishee. Upon the issues thus made a hearing was had, and the court made findings of fact, conclusions of law and entered its decree on April 5, 1924, adjudging that the Bankers' Trust Company deliver to the sheriff of Weber county certain certificates of stock therein mentioned, to be sold at public auction by said sheriff in the manner provided by statute for the sale of personal property under execution. The decree further directed disposition to be made of the proceeds of the sale. The Bankers' Trust Company complied with the order by delivering the certificates of stock to the said sheriff, and the sheriff, under an order of sale issued by the clerk of the court, proceeded to advertise the stock for sale. Thereupon one Sanders, not a party to the original proceeding or to the garnishment proceedings, filed written notice with the sheriff, claiming to be the owner of the stock in controversy. The sheriff requested Henderson & Johnson to furnish an indemnity bond. They declined to furnish such bond, insisting that the sheriff was not entitled to any indemnity, and the sheriff refused to make the sale. Thereupon an affidavit was presented to the court reciting the fact of the sheriff's refusal to proceed with the sale. The sheriff was cited before the court, and adjudged guilty of contempt in not complying with the court's decree ordering sale of the corporate stock.

Two questions are argued in the briefs of counsel: First, it is insisted by plaintiff that the findings of the court in the garnishment proceedings do not support the court's decree. Second, that, if the judgment is a valid and binding judgment, nevertheless, where a third party claims to be the owner of the property, the sheriff is entitled to indemnity against loss or damages in the event of the property not belonging to the judgment debtor and being the property of a third person not a party to that action.

On the part of defendants it is claimed that this court will not examine findings to determine whether the same support the judgment, but, if it appears from the record that the lower court had jurisdiction of the parties and of the subject-matter and regularly pursued its authority, the proceedings

leading up to the judgment, or, more specifically, the findings of fact made by the lower court, cannot be reviewed by this court under a writ of certiorari.  It is also contended by defendants that the' sheriff is a mere ministerial officer of the court, and in carrying into effect this decree, if the decree is regular on its face, he is protected against any claim for damages sustained by others claiming the property.

Comp. Laws Utah 1917, § 7376, provides that ''the writ of certiorari may be denominated the writ of review.''  Section 7377 provides that—

"A writ of review; may be granted by the Supreme Court * * * when an inferior tribunal board or officer exercising judicial functions has exceeded the jurisdiction of such tribunal board, or officer, and there is no appeal, nor, in the judgment of the court or judge, any plain, speedy, and adequate remedy. * * *"

Section 7383 provides that—

"The review upon this writ cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer."

District courts are courts of general jurisdiction.  It appears from the record in this case, and is recited in the decree, that all parties to the action had appeared, or had been served with process and had failed to appear, and their defaults had been entered before the trial.  It therefore appears that the district court had jurisdiction of the parties as well as of the subject-matter in controversy.  The office and the limitations of a writ of this kind are stated in the provisions of the Code above quoted.  It is however, earnestly insisted that it has been determined by this court that under a writ of review this court may and will examine into the evidence and findings to determine whether there is any evidence to support the judgment and whether the findings support the judgment entered by the district court.  Reliance is had upon the opinions of this court in *Gilbert* v. *Board of P. & F. Com'rs,* 11 Utah, 378, 40 Pac. 264, and *S. L. C., etc., Co.* v. *Salt Lake City,* 24 Utah, 282, 67 Pac. 791.  It may be seriously doubted whether the facts in those cases warrant the application of the rule therein stated to the facts in this case.

Conceding, however, that the language found in the opinions in those cases supports the contention of counsel for plaintiff, the rule therein stated has been limited, if not overruled, by later decisions. The statutes quoted do not seem to contemplate that under a writ of this nature this court has authority to inquire into the regularity of the proceedings or into any errors of law that may have been committed by the lower court or tribunal but will confine its considerations primarily to the question whether the lower court or tribunal had jurisdiction of the parties and of the subject-matter, and regularly pursued its jurisdiction therein.

In *O. S. L. R. R. Co.* v. *District Court,* 30 Utah, 371, at page 374, 85 Pac. 360, 362, of the Utah report, the court says:

"We therefore adhere to the doctrine announced in the Crooks and Smith Cases that this court will not permit a writ of certiorari to be used to exercise the functions of an ordinary appeal and to review errors and mistakes where the court acted within its jurisdiction. Under the statute the office of a writ of certiorari is to inquire into and to review determinations made without jurisdiction or in excess of the jurisdiction conferred. We have the undoubted right by writ of certiorari to inquire into and to review such determinations."

In *Page* v. *Bank,* 38 Utah, at page 449, 112 Pac. 816, 819, it is said:

"The jurisdiction is given by the general appearance, and it exists and the only way it can be questioned under such circumstances is by way of an appeal by which the proceedings may be reversed and set aside because the court erred in assuming jurisdiction, but not because it had no jurisdiction to proceed at all and thus had no jurisdiction even to err."

In *Higgs* v. *Burton,* 58 Utah, at page 104, 197 Pac. 728, 730, the court says:

"Certiorari is a speedy remedy where it appears upon the face of the record that the court, board, or officer has proceeded without or in excess of jurisdiction. That remedy was, however, not intended to reach cases where the record may not speak the truth or where fraud or other unlawful means were practiced in obtaining the judgment, as is pointed out in Black on Judgments and in the Utah cases to which reference has just been made. Certiorari proceedings cannot be converted into writs of error."

In *Rohwer* v. *District Court,* 41 Utah, at page 284, 125 Pac. 671, 673, the court says:

"The court having acquired jurisdiction of the estate, we cannot, in this proceeding, inquire into the regularity of the proceedings, or whether the court may have erred in matters of law when the acts constituting such assumed irregularities were not without or in excess of jurisdiction."

The great weight of authority in this country is to the effect that under statutes such as ours a writ of review will extend no further than to determine whether the inferior court or tribunal has exceeded its jurisdiction either by want of having acquired jurisdiction of the parties or not having jurisdiction of the subject-matter. If the language found in the cases reported in 11 and 24 Utah, and relied on by plaintiff, is in conflict with the views expressed by the later decisions, and as herein expressed to that extent those cases must be considered as overruled. We have, in two recent instances, refused to follow the language found in 11 and 24 Utah. In one instance a writ was issued based upon the claim or contention of the petitioner that there was no evidence in the trial court to support the judgment. In that case, after the writ had been issued, the court declined to hear further argument, and dismissed the writ. In the other instance the application was based upon a like claim. The court refused to issue the writ upon the theory that it could not inquire into that question but was confined to a determination only of whether the inferior court had jurisdiction and had regularly pursued the same.

As indicated, it appears from the record in this case, and it is recited in the judgment, that the district court of Weber county had jurisdiction of the parties then before it, and had jurisdiction of the subject-matter, and that the judgment is regular upon its face. "Recitals of jurisdictional facts in a record or decree import verity and binding effect, and must be so treated when attacked collaterally." *Hoagland* v. *Hoagland,* 19 Utah, 103, 57 Pac. 20. The court cannot therefore examine the findings to determine whether such findings support the decree or judgment in question.

Passing now to the second proposition argued, section 6922, Comp. Laws Utah 1917, is relied on by the sheriff as justifying his refusal to comply with the court's judgment directing a sale of the corporate stock, and as grounds for the claim that the court exceeded its power in adjudging him in contempt. That section reads as follows:

"If the officer, by virtue of an execution issued from any court, shall levy the same on any goods and chattels claimed by any person other than the defendant, or be requested by the plaintiff to levy on any such goods and chattels, the officer may require the plaintiff to give him an undertaking with good and sufficient sureties to pay all costs and damages that he may sustain by reason of the detention or sale of such property; and until such undertaking shall be given, the officer may refuse to proceed as against such property."

The chapter of the Code headed "Executions" provides that the party in whose favor judgment is rendered may at any time within eight years have a writ of execution issue for its enforcement (section 6912); that the writ shall be issued in the name of the state, directed to the sheriff of the county in which the writ is to be executed, and must intelligently refer to the judgment, stating the court where the judgment roll is filed, the names of the parties, etc. (section 6913); that, if the judgment is against the property of the judgment debtor, it must require the officer to satisfy the judgment out of the personal property, if sufficient, and, if not sufficient, then out of the real property, or, if the judgment is a lien upon real property, then out of the real property belonging to him on the date when the judgment is docketed or any time thereafter (section 6913, subd. 1); that, if the judgment be against the real or personal property in the hands of personal representatives, heirs, etc., it must require the officer to satisfy the judgment out of such property (section 6913, subd. 2); that, if the judgment be for any specific kind of currency, it must also require the officer to satisfy the same in the kind of currency provided in the judgment (section 6913, subd. 4); and, if it be for delivery of possession of real or personal property, it must require the officer to deliver possession of the same, describing it, to the party

entitled thereto (section 6913, subd. 5). Section 6916, in the same chapter, is as follows:

"When the judgment is for money or the possession of real or personal property, the same may be enforced by a writ of execution; and if the judgment direct that the defendant be arrested, the execution may issue against the person of the judgment debtor, after the return of an execution against his property unsatisfied in whole or in part. When the judgment requires the sale of property, the same may be enforced by a writ reciting such judgment, or the material parts thereof, and directing the proper officer to execute the judgment by making the sale and applying the proceeds in conformity therewith. When the judgment requires the performance of any other act than as above designated, a certified copy of the judgment may be served upon the party against whom the same is rendered, or upon the person or officer required thereby or by law to obey the same, and obedience thereto may be enforced by the court."

It is evident that the writ placed in the hands of the sheriff, directing the sale of the corporate stock, falls within the latter part of the last section quoted. It is not such a writ as is described in section 6913, supra. It partakes more of the nature of a direct order of the court designating the duties the officer is required to perform. Indeed, **3** the provisions of section 6916 recognizes the distinction between a writ of the nature under consideration here and a writ of execution. It is provided in that section what judgments may be enforced by a "writ of execution." The latter part of the section provides when the judgment is for the sale of property the same may be enforced by a writ "reciting such judgment," etc. In the absence of statute, or, as generally expressed, at common law, the officer had no right to demand indemnity for enforcing an execution. He was required to make the levy and thereby subject himself to an action for trespass, if the property levied upon was not the property of the debtor; or he could refuse to make the levy and subject himself to an action by the judgment creditor. True, courts usually found some method of relieving the officer from this harsh rule. The means by which that was accomplished are immaterial here. It is quite evident, in our judgment, that the legislative intent in enacting section 6922,

supra, was to provide means of holding the officer harmless in the execution of process wherein he might be liable if he levied upon property not property of the judgment debtor. It therefore, in the consideration of this case, becomes of first importance to determine whether in the execution of the decree or judgment made by the court on April 5th the officer would render himself liable to damages, if it should afterwards be determined that the property was not the property of the judgment debtor, or if it should afterwards be determined that the court in rendering the judgment had committed prejudicial error.

Much is said in the briefs of counsel respecting what writs are included in the term "execution," and what writs were intended to be included in that term by the Legislature. In our judgment, the remarks of the various courts in attempting to define what writs may be properly included in the term "execution" are not of importance or controlling in this case. The character of the writ is to be determined by the functions to be performed under its authority, rather than by its name." *So. Cal. L. Co.* v. *Hotel Co.*, 94 Cal. at page 223, 29 Pac. 629, 28 Am. St. Rep. 115. In an early case the Supreme Court of the United States pointed out the distinction between writs that would afford protection to an officer executing the same, and writs that would not afford such protection. In *Buck* v. *Colbath*, 3 Wall. at page 342, 18 L. Ed. 257, the court says:

"How far the courts are bound to interfere for the protection of their own officers is a question not discussed in the case of *Freeman* v. *Howe*, but which demands a passing notice here. In its consideration, however, we are reminded at the outset that property may be seized by an officer of the court under a variety of writs, orders, or processes of the court. For our present purpose, these may be divided into two classes:

"1. Those in which the process or order of the court describes the property to be seized, and which contain a direct command to the officer to take possession of that particular property. * * *

"2. Those in which the officer is directed to levy the process upon property of one of the parties to the litigation. * * * Of this class are the writ of attachment, or other mesne process, by which property is seized before judgment to answer to such

judgment when rendered, and the final process of execution, elegit, or other writ, by which an ordinary judgment is carried into effect.

"It is obvious, on a moment's consideration, that the claim of the officer executing these writs, to the protection of the courts from which they issue, stands upon very different grounds in the two classes of process just described. In the first class he has no discretion to use, no judgment to exercise, no duty to perform but to seize the property described. It follows from this, as a rule of law of universal application, that if the court issuing the process had jurisdiction in the case before it to issue that process, and it was a valid process when placed in the officer's hands, and that, in the execution of such process, he kept himself strictly within the mandatory clause of the process, then such writ or process is a complete protection to him, not only in the court which issued it, but in all other courts."

The same rule is recognized and applied by the same court in *Erskine* v. *Hohnbach,* 14 Wall. 613, 20 L. Ed. 745. At page 616 of the report the court says:

"Whatever may have been the conflict at one time, in the adjudged cases, as to the extent of protection afforded to ministerial officers acting in obedience to process, or orders issued to them by tribunals or officers invested by law with authority to pass upon and determine particular facts, and render judgment thereon, it is well settled now, that if the officer or tribunal possess jurisdiction over the subject-matter upon which judgment is passed, with power to issue an order or process for the enforcement of such judgment, and the order or process issued thereon to the ministerial officer is regular on its face, showing no departure from the law, or defect of jurisdiction over the person or property affected, then, and in such cases, the order or process will give full and entire protection to the ministerial officer in its regular enforcement against any prosecution which the party aggrieved thereby may institute against him, although serious errors may have been committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process is issued."

The same general rule is recognized in *Conner* v. *Long,* 104 U. S. 228, 26 L. Ed. 723. In the course of that opinion the court quotes with approval from *Watson* v. *Watson,* 9 Conn. 146, 23 Am. Dec. 324, as follows:

"Obedience to all precepts committed to him [the sheriff], to be served, is the first, second, and third part of his duty; and hence, if they issue from competent authority, and with legal

regularity, and so appear on their face, he is justified for every action of his, within the scope of their command."

The language of Mr. Justice Field, in *Erskine* v. *Hohnbach,* supra, has the approval of the court in *Stutsman Co.* v. *Wallace,* 142 U. S. 293, 12 Sup. Ct. 227, 35 L. Ed. 1018. See, also, *Hill* v. *Rasicott, Sheriff,* 34 Minn. 270, 25 N. W. 604; Freeman on Executions (3d Ed.) § 254, and cases there cited. Also *Snyder* v. *Hausheer* (C. C. A.) 268 Fed. 776.

I have found no authority contrary to the rule stated in the foregoing cases. Applying these general principles of law to the writ issued to the sheriff by the district court herein, the conclusion is irresistible that the sheriff, in the execution of the writ, is fully protected, not only against any claims of the parties to the action, but against claims of any other person so long as he proceeds and complies with the plain intent and mandate of the writ, unless some provision of our Code has given the officer the further and additional right to demand an indemnifying bond.

It is without question that the writ delivered to the sheriff did not require any affirmative act on his part to reduce the property to his possession and thereby bring it within the custody of the law. In other words, he was not required to do any act which falls within the accepted definition of what acts constitute a levy, either under the levy of an execution or a levy under other writs such as writs of attachment. "Undoubtedly, the chief object of the levy is, by some well-defined act, to take the property from the custody of the defendant and place it in the custody of the law. Being once put into the custody of the law, it is consecrated to the satisfaction of the writ" (Freeman on Executions [3d Ed.] § 274), "and wherever found, it [the levy] means to do the act, or acts, by which a sheriff sets apart and appropriates, for the purpose of satisfying the command of his writ, a part or the whole of the defendant's goods and chattels." *Lloyd* v. *Wyckoff,* 11 N. J. Law, 227.

As pointed out, no act constituting a levy on the particular property sought to be sold was required by the sheriff to bring the specific property within the custody of the law.

It was already there by order of the court. It was delivered to the sheriff by a party to the suit in compliance with an order of the court. The sheriff's duty was to execute the writ by the sale of the property in compliance with the provisions of section 6916, supra. Section 6922, supra, contemplates that the sheriff is entitled to indemnity when he shall levy execution on the goods and chattels claimed by another person than the defendant, or when he is required by the plaintiff to levy on such goods and chattels. In other words, that section contemplates carrying into effect an ordinary execution. Section 6922, supra, was, in our judgment, enacted for the benefit of the officer, and not for others not parties to the litigation. The statute is:

"The officer may require the plaintiff to give him an undertaking with good and sufficient sureties to pay all costs and damages that he may sustain," etc.

If it be contended that the section was enacted also for the benefit of other persons, then it was to that extent wholly useless legislation. The sheriff cannot sell, and does not attempt to sell, any title to the property, except the interest of the judgment debtor in the property sold. If the judgment debtor has no interest in the property, and the property belongs to a third party, that party could recover it or its value into whosesoever hands it might find its way.

"This brings me to the consideration of two views of the case presented by the ingenious counsel for the plaintiff in error. And first, he says, that the judgment is not binding upon the person in possession, for he was not before the court. As to him, the court had no jurisdiction. Assuming these things, he draws the inference, first, that he cannot be divested of his right to the property by any operation of the judgment; and second, that the officer had no right to make the levy. To which it is very easy to reply, and as conclusive as easy, that no jurisdiction is assumed over him, and that a levy upon his property does not divest his right to it. His title will still be protected. He can interpose his claim, or bring suit, and if the property is shown to be his, he will hold it, both against the judgment of foreclosure and the lien of the contract. So no inference can be drawn against the obligation of the officer to make the levy, from the assumption that the levy in this, or any like case, divests the title of a third person,

not bound by the judgment. Again, he says, that the demurrer admits the fact, that this property is the property of a third person, and not the property of the defendant in execution, and it must, therefore, be a trespass to levy upon that property. We may concede that the record does, technically, admit these things, but what of that? We are not here invoked to determine the right of property between these parties, but to say what was the duty of the levying officer at the time when the law required him to levy." *Wallace* v. *Holly*, 13 Ga. at page 394, 58 Am. Dec. 518.

We are of opinion, and so hold, that the court had jurisdiction to enter the judgment that it did enter on April 5, 1924; that the judgment is regular upon its face; that in the exercise of jurisdiction the court regularly pursued its powers; that the sheriff in carrying into effect the decree or judgment is protected against the claims of any and all persons who may have an interest in that property, and that section 6922 is not applicable to a writ of the nature under consideration in this case.

It necessarily follows that the court did not exceed its jurisdiction in adjudging the officer to be in contempt.

The prayer of plaintiff that the district court be restrained from enforcing its judgment is denied.

WEBER, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.